IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

WEST ALABAMA WOMEN'S        )
CENTER and WILLIAM J.       )
PARKER, M.D., on behalf of  )
themselves and their        )
patients,                   )
                            )      CIVIL ACTION NO.
        Plaintiffs,         )        2:15cv497-MHT
                            )            (WO)
        v.                  )
                            )
THOMAS M. MILLER,           )
M.D., in his official       )
capacity as State Health    )
Officer,                    )
                            )
        Defendant.          )

OPINION AND ORDER

Plaintiffs West Alabama Women's Center, a Tuscaloosa
clinic that provides abortions and other
reproductive-health services, and William J. Parker,
M.D., the clinic's physician, filed this as-applied
Fourteenth Amendment challenge to an abortion regulation
with which they could not comply and which had forced the

clinic to close. The defendant is the State Health Officer for the Alabama Department of Public Health. The court entered an order temporarily restraining enforcement of the regulation, and then stayed this action at the request of the parties so as to give the Department an opportunity to modify the regulation.

This litigation is currently before the court on West Alabama and Parker's motion to lift the stay and for leave to supplement their complaint. They seek to continue their challenge to the Health Department's regulation, albeit as newly amended, and to add challenges to two recently enacted statutes that primarily impact West Alabama and one other abortion clinic in the State. Based on the representations made by the parties in briefs and at oral argument, the court concludes that West Alabama and Parker's motion should be granted.

## I. BACKGROUND

In late 2014, West Alabama's sole, long-serving physician retired. The clinic found a new physician, Parker, who agreed to replace the retiring physician. However, West Alabama and Parker were unable to comply with an Alabama Department of Health regulation applicable to abortion clinics and physicians. That regulation, Alabama Administrative Code § 420-5-1-.03(6)(b), provided that every abortion provider must maintain staff privileges at a local hospital or, alternatively, that any facility at which a physician without admitting privileges provides abortions must maintain a contract with a covering physician who has such privileges.[1] While West Alabama's

---

1.   Enforcement of an Alabama statute requiring that all physicians providing abortions have admitting privileges was enjoined by this court in a separate lawsuit, Planned Parenthood Se., Inc. v. Strange (Strange III), 33 F. Supp. 3d 1330, 1378 (M.D. Ala. 2014) (Thompson, J.) (finding that 1975 Ala. Code § 26-23E-4(c) creates an undue burden, at least as to the plaintiff clinics).   See also Planned Parenthood Se., Inc. v. Strange (Strange V), -- F. Supp. 3d --, 2016 WL 1167725 (M.D. Ala. March 25, 2016) (Thompson, J.) (declaring the

retiring physician had held staff privileges at a local
hospital, Parker was not able to obtain staff privileges
or secure a contract with a covering physician for the
clinic.  As a result, in January 2015, the clinic closed.

On July 10, 2015, West Alabama and Parker filed this
as-applied constitutional challenge to the regulation.
In early August 2015, after the parties had submitted
substantial evidence and briefed and orally argued the

---

admitting-privileges        requirement        facially
unconstitutional).    At the time this West Alabama
litigation commenced, the regulation had been amended in
light of the statute and in the wake of the Strange
litigation; it still allowed for compliance in either of
two ways.   As this court previously explained in August
of last year, "the regulation now states that the
statutory requirement that all physicians obtain staff
privileges is 'stayed until such time that the
restraining order is lifted or there has been a final
disposition allowing for enforcement of this requirement
in Planned Parenthood Southeast, et al. v. Strange, et
al., Civil Action No. 2:13-cv-504-MHT,' and that, 'until
that time,' clinics may comply with the regulation by
contracting with a covering physician.   Although the
revised language of the regulation is a bit abstruse, it
appears that both sides in this litigation agree that the
current regulation retains the same two alternative
routes for compliance: staff privileges for the doctor
or a covering-physician contract for the clinic."   W.
Ala. Women's Ctr. v. Williamson, 120 F. Supp. 3d 1296,
1301 n.2 (M.D. Ala. 2015) (Thompson, J.).

complex legal and factual issues, and because the clinic was then set to lay off staff and shut down permanently, the court temporarily enjoined enforcement of the regulation until August 18 and promised that an opinion would follow. W. Ala. Women's Ctr. v. Williamson, No. 15cv497, 2015 WL 4932810, at *1 (M.D. Ala. Aug. 4, 2015) (Thompson, J.). In mid-August, the court issued an 81-page opinion setting forth in detail the legal and factual basis for the injunction. W. Ala. Women's Ctr. v. Williamson, 120 F. Supp. 3d 1296 (M.D. Ala. 2015) (Thompson, J.). The clinic reopened shortly thereafter.

In late August, after the injunction had been extended by agreement of the parties, the court approved a stipulation they had submitted. The stipulation provided that, for one year, while the Health Department sought to modify the regulation, this litigation would be stayed and enforcement of the regulation would be waived as to West Alabama.[2] W. Ala. Women's Ctr. v.

---

2. This waiver was subject to some additional conditions not relevant here.

<u>Williamson</u>, No. 15cv497, 2015 WL 5164054, at *2 (M.D. Ala. Aug. 31, 2015) (Thompson, J.).

In June 2016, West Alabama and Parker filed the pending motion to lift the stay and for leave to supplement their complaint as follows: to continue their challenge to the abortion regulation, albeit as amended since the stay was entered, and to add challenges to two recently enacted Alabama statutes that primarily impact West Alabama and one other abortion clinic.

During the stay, the regulation was amended to add an additional alternative for compliance: any abortion clinic that is unable to comply with the staff-privileges or covering-physician requirements may remain in compliance by, among other measures not at issue, ensuring that every woman who receives an abortion at the facility "receive[s] a copy of her medical record that pertains to the current abortion procedure prior to leaving the facility." Ala. Admin. Code § 420-5-1-.03(6)(c)(4).

In their proposed supplemental complaint challenging

6

the amended regulation, West Alabama and Parker allege
that: "A patient's medical records from [West Alabama]
contain her most personal and sensitive information.  In
addition to details of the abortion procedure itself,
this information includes but is not limited to ... the
patient's medical and surgical history, including her HIV
status, history of sexually transmitted infections,
mental health history, and her pregnancy history,
including number of children, miscarriages, and prior
abortions; notes from the patient's pre-abortion
counseling session about her reasons for seeking the
abortion; and the name and signature of the person who
will drive her home from the clinic."  Proposed Suppl.
Compl. (doc. no. 32-1) at 16.  They further allege that:
"The medical records requirement jeopardizes the privacy
of [West Alabama]'s patients by increasing the likelihood
that highly sensitive information, including the
patient's decision to have an abortion, will be exposed
to third parties."  Id. at 19.  And they continue that:
"Forcing a woman who has just had an abortion to receive

7

a copy of her medical record reflecting her entire sexual and medical history and the care she received at [West Alabama] makes it substantially more likely that an abusive partner (or relative) will learn that information. For victims of abuse, this could jeopardize their wellbeing, safety, or even their lives." Id. at 20. The Health Department adopted the amended regulation despite the fact that, according to the proposed supplemental complaint, the department had, during the comments period, "received multiple comments opposing the medical records requirement on the basis that it would pose an unacceptable threat to patient confidentiality and singled out abortion providers for a requirement not imposed on any other healthcare providers." Id. at 11.

Since the stay was entered, the State Legislature enacted and the Governor signed two new statutes the plaintiffs also seek to challenge. The first of these is Senate Bill 205, which prohibits the licensure of abortion clinics located within 2,000 feet of a K-8 public school, and which primarily impacts West Alabama

8

and one other abortion clinic.  This court will refer to this Act as the "school-proximity law."

The second newly enacted statute is Senate Bill 363, the Alabama Unborn Child Protection from Dismemberment Abortion Act, which West Alabama and Parker allege prohibits the dilation and evacuation (D&E) abortion procedure used in second-trimester abortions, and which primarily impacts West Alabama, the primary provider (and one of only two providers) of second-trimester abortions in the State.  Tr. of June 17, 2016, Telephone Conference on Pls.' Mot. to Suppl. (doc. no. 48) at 16-17.  Because West Alabama and Parker refer to this act as the "D & E law," this court will temporarily do so as well.[3]

_____

    3. The court should not be understood to agree with West Alabama and Parker that the statute in fact covers or bans the D & E procedure; the statute's coverage is uncertain at this point.  The court is merely relying--as it must at this time--upon the allegations of the proposed complaint.

## II. DISCUSSION

West Alabama and Parker request that the court allow them to supplement their complaint with three new claims: (1) a challenge to the regulation, as subsequently amended; (2) a challenge to the school-proximity law; and (3) a challenge to the D&E law.

Because the State Health Officer has conceded on the record that it is appropriate to lift the stay and to permit supplementation of the complaint with the challenge to the amended regulation, id. at 4, the stay will be lifted and West Alabama and Parker's motion to supplement will be granted as to that claim.[4]  The only issue that needs discussion is whether to allow the addition of the challenges to the school-proximity law

---

4. The State Health Officer also contends that West Alabama and Parker are misreading the regulation as being more burdensome than it actually is.  West Alabama and Parker respond that it is counsel for the State Health Officer who is misreading the regulation--and that the interpretation the State Health Officer offers is not binding on the Department of Public Health.  These are substantive matters that remain to be litigated.

and the D&E law to this now-reopened and ongoing litigation.

## A. Legal Standard

Supplemental pleadings are governed by Federal Rule of Civil Procedure 15(d), which provides:

> "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time."

"As written," therefore, "Rule 15(d) contains no standards at all to guide the district court's analysis; it merely authorizes the district court to permit service of a supplemental pleading 'on just terms.'" U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 7 (1st Cir. 2015), cert. denied, No. 15-1309, 2016 WL 1643545 (U.S. June 27, 2016). The Rule "is intended to give the court

broad discretion in allowing a supplemental pleading."
Fed. R. Civ. P. 15(d) advisory committee's note to 1963
amendment.  However, there is still the question of how
this discretion should be exercised.

Perhaps most important, this broad discretion
obviously places upon a court a corresponding obligation
to articulate adequately the basis for any decision
reached based on the exercise of that discretion--not
simply so as to facilitate appellate review, but also to
assure that the discretion is exercised based upon
reasoned judgment and not arbitrarily or out of mere
instinct.

Toward this end, courts have articulated a few
general guidelines.  First, "in keeping with the
overarching flexibility of Rule 15, courts customarily
have treated requests to supplement under Rule 15(d)
liberally." Gadbois, 809 F.3d at 7. (citation omitted).
See also Harris v. Garner, 216 F.3d 970, 984 (11th Cir.
2000) (noting "the liberal allowance of amendments or
supplements to ... pleading under Rule 15").  Indeed, the

Supreme Court has stated that supplementation can even include new claims and new parties.  See Griffin v. Cty. Sch. Bd. of Prince Edward Cty., 377 U.S. 218, 227 (1964).

"This liberality is reminiscent of the way in which courts have treated requests to amend under Rule 15(a)'s leave 'freely give[n]' standard." Gadbois, 809 F.3d at 7 (citations omitted).  As Judge Haynsworth famously put it, "a supplemental pleading ... is a useful device, enabling a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay, and waste of separate actions which must be separately tried and prosecuted.  So useful they are and of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears ...." New Amsterdam Cas. Co. v. Waller, 323 F. 2d 20, 28-29 (4th Cir. 1963), cert. denied, 376 U.S. 963 (1964).

Nevertheless, while the court's discretion is broad, and while that discretion should be exercised liberally, it is not unlimited.  First, there is the express

limitation that any supplementation must be based on a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).   And there is the obvious and reasonable requirement that the supplementation have "some relation" to what is sought to be supplemented. Rowe v. U.S. Fid. & Guar. Co., 421 F.2d 937, 943 (4th Cir. 1970).

Moreover, experience, as revealed in case law, teaches that there are a number of factors that courts, in reaching their reasoned judgment, should weigh when relevant:  Would the supplementation be futile?  Would a nonmovant be prejudiced?  Has there been unreasonable delay in presenting the supplementation?  And would the supplementation facilitate the efficient resolution of current claims as well as any new ones?  Gadbois, 809 F.3d at 7; see also 6A Wright & Miller, Fed. Prac. & Proc. Civ. § 1504 (3d ed.).  Of course, none of these factors is necessarily dispositive in and of itself. Rather, the court must "weigh the totality of

14

circumstances." <u>Gadbois</u>, 809 F.3d at 7.  In other words, "[e]verything depends on context."  <u>Id</u>.  The bottom line is: Would the supplementation promote "the efficient administration of justice"?  <u>New Amsterdam Cas. Co.</u>, 323 F. 2d at 28-29.

### B. West Alabama and Parker's Challenges to the School-Proximity and D&E Laws

Applying the above principles and guidelines, the court finds that supplementation with West Alabama and Parker's challenges to the school-proximity and D&E laws is appropriate.

### 1. School-Proximity Law

There are a number of compelling reasons why West Alabama and Parker's school-proximity claim should be added to this litigation.

<u>First</u>, the stipulation the parties entered into as a part of the stay of these proceedings expressly permitted West Alabama and Parker, at the end of the stay, to "amend the complaint" and "seek other appropriate relief," <u>W.</u>

<u>Ala. Women's Ctr.</u>, 2015 WL 5164054, at *2--and notably without setting forth any limitation on what that amended complaint could include or what that other appropriate relief could be.  Therefore, as a general matter, not only does the school-proximity claim meet Rule 15(d)'s requirement that it arise out of events that occurred after this litigation was filed, but the stipulation reflects that, as a practical matter, the litigation has not progressed to the point where the parties no longer expected new claims and new requests for relief based on new events.

    <u>Second</u>, the current plaintiffs, West Alabama and Parker, are also plaintiffs for the school-proximity claim.  And the current defendant, the State Health Officer, is not only also a defendant to the school-proximity claim, he is perhaps the only clearly appropriate one for that claim.  Based on the plain text of the school-proximity law, the State Health Officer--who presides over the Alabama Department of Public Health--is the individual responsible for

enforcing the law.  The law provides that, "The Alabama Department of Public Health may not issue or renew a health center license to an abortion clinic or reproductive health center that performs abortions and is located within 2,000 feet of a K-8 public school." Ex. B, Pls.' Mot. to Lift Stay and to File Suppl. Compl. (doc. no. 32-1) at 1.   Indeed, in proceedings in this court, defense counsel conceded that the Health Officer is responsible for declining to issue or renew a license for a clinic that violates the law, and counsel admitted that the Health Officer might even be the individual who would measure the distance between a K-8 public school and an abortion clinic or reproductive health center if a dispute arose as to whether a facility's license should be renewed.  Tr. of June 17, 2016, Telephone Conference at 9-10.  As no other State department, agency, or official is mentioned in the statute by name, the State Health Officer would likely be called upon to defend any challenge to the school-proximity law, whether the plaintiffs were permitted to supplement their original

17

complaint in this case or were forced to bring the challenge in a separate suit. See Am. Civil Liberties Union v. Fla. Bar, 999 F.2d 1486, 1490 (11th Cir. 1993) ("Under United States Supreme Court precedent, when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant, even when that party has made no attempt to enforce the rule."). Thus, because the parties appear to be appropriately the same, they will, with the addition of the school-proximity claim, save the costs, both in money and time, of litigating a separate proceeding between them.

Third, the school-proximity claim and this litigation (in particular, the challenge to the original regulation) bear a substantial legal and evidentiary relationship to each other, and the resolution of the school-proximity claim in the context of this ongoing litigation will allow for a more efficient and expeditious resolution of that claim.

To begin, there is significant overlap between the legal analysis that the court has already performed, at length, in the litigation of the original claim in this case and the analysis it will need to perform in the litigation of the school-proximity claim.  In analyzing the original regulation, this court applied the following analysis: The court observed that "'An undue burden is an unconstitutional burden,' and a 'finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.'" W. Ala. Women's Ctr., 120 F. Supp. 3d at 1307 (quoting Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 877 (1992) (plurality opinion)).  To determine whether the regulation imposed a substantial obstacle, this court asked "whether, examining the regulation in its real-world context, the obstacle is more significant than is warranted by the State's justifications for the regulation." Id. (quoting Planned Parenthood Se., Inc. v. Strange (Strange III),

33 F. Supp. 3d 1330, 1337 (M.D. Ala. 2014) (Thompson, J.)
(internal citations and additional citations omitted)).
The court analyzed "the obstacles and justifications for
the regulation ... , as applied to plaintiffs, and then
evaluate[d] whether the obstacles [were] more severe than
warranted by the State's justifications." Id. See also
Whole Woman's Health v. Hellerstedt, No. 15-274, 2016 WL
3461560, at *20 (U.S. June 27, 2016) (in applying the
undue-burden standard, considering closures of abortion
clinics due to an admitting-privileges requirement that
"meant fewer doctors, longer waiting times, and increased
crowding ... in light of [the requirement's] virtual
absence of any health benefit").   In evaluating the
obstacles, the court undertook a "two-step inquiry ... :
[enquiring] first, whether the regulation will force
[West Alabama] to remain closed; and second, if [West
Alabama] remains closed, and no other clinic takes its
place, determining the effect on Alabama women who seek
abortions." W. Ala. Women's Ctr., 120 F. Supp. 3d at
1307.

While the justifications for the original regulation differed from those that will probably be proffered for the school-proximity law, the analytical approach the parties and the court will employ for assessing the constitutionality of the school-proximity law will likely largely be the same. Thus, it appears that the court and the parties are already fully familiar with the complex legal framework within which the school-proximity claim will need to be considered.

But more important, much, if not most, of the evidence that has already been presented to, and considered by, the court will likely be directly relevant to consideration of the school-proximity claim. Because the original regulation would allegedly have resulted in the permanent closure of West Alabama and because the school-proximity law will allegedly result in West Alabama's closure as well, a good bit of evidence already presented to the court on the alleged impact of the clinic's closure on Alabama women seeking an abortion, see id. at 1309-1312, will most likely also be directly

21

relevant to the school-proximity claim. Admittedly, because the school-proximity law will allegedly result in the closure of not only West Alabama but a second abortion clinic, the evidence pertaining to the school-proximity claim will likely be more extensive. However, this difference does not detract from the fact that a good deal of the evidence already before the court will be relevant to the school-proximity claim. Indeed, neither West Alabama and Parker nor the State Health Officer disputes this. See Tr. of June 17, 2016, Telephone Conference at 14 (counsel for plaintiffs stating that they intend to present much of the same evidence on the school-proximity claim that this court heard during the litigation of the initial challenge to the staff privileges/covering physician regulation); id. at 12 (counsel for State Health Officer stating that "a lot of the evidence [presented as to the school-proximity claim] would be the same" as that presented in the original proceeding). Without question, the litigation of the school-proximity claim in this case will be much

less costly and time-consuming, and will thus better promote "the efficient administration of justice."  New Amsterdam Cas. Co., 323 F. 2d at 28-29.

Fourth, one of the primary goals of Rule 15(d) is to aid in the complete resolution of disputes between parties.  Id. at 28 (explaining that supplemental pleading "enabl[es] a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted").  As already observed, West Alabama and Parker filed the challenge to the original regulation to prevent permanent closure of the clinic due to a legal requirement enforced by the State Health Officer; now the regulation has been amended, but West Alabama still faces the threat of closure due to a law that will prevent the reissuance of its license by the State Health Officer.  The dispute between West Alabama and the Health Officer, therefore, remains alive.  In this straightforward and compelling sense, because this dispute over whether the clinic can

continue to operate has not been completely resolved, supplementation is in the true spirit of Rule 15(d).

Fifth, the court has so far discussed the school-proximity claim's relationship with the challenge to the original regulation. The school-proximity claim also bears a relationship to the challenge to the amended regulation, a challenge which all parties agree should now be part of this litigation. Supplementation is warranted, in this regard, because resolution of the challenge to the amended regulation and that of the school-proximity claim are somewhat interdependent. If West Alabama and Parker's challenge to the school-proximity law is unsuccessful and West Alabama is forced to close at the end of 2016, their further litigation of the amended-regulation challenge in this court and on appeal would become moot; it would make little sense to hold a trial or grant permanent relief as to West Alabama and Parker's amended-regulation claim until a preliminary assessment is made that the clinic is likely to prevail on its challenge to the

school-proximity law, and thus likely to remain open.
Given the interrelated nature of the two challenges, it
makes sense to consider them in one lawsuit.  The
determination of how these claims should be resolved so
as to keep down litigation costs and conserve judicial
resources can be more easily and efficiently made in one
lawsuit rather than two.

Sixth, the posture of this litigation supports
supplementation.  Admittedly, on the one hand, there was
much evidentiary development in this case with regard to
the original challenge to the Health Department
regulation; but this was done because the challenge
needed expeditious resolution.  However, on the other
hand, this court now has a new challenge to the regulation
as amended; the Health Officer has yet to respond to this
new claim; no uniform scheduling order with discovery and
other deadlines has ever been entered; and no pretrial
conference has been held.  Supplementation would
essentially come at the outset of the new challenge to
the amended regulation.

In conclusion, for the numerous reasons given above, the court holds that Rule 15(d) supplementation is appropriate for West Alabama and Parker's school-proximity claim against the State Health Officer.

## 2. The D&E Law

Whether, with an eye on the big picture as well as the details, supplementation is appropriate as to West Alabama and Parker's challenge to the D&E law is a closer question.  Unlike with regard to the original regulation and the school-proximity law, West Alabama and Parker do not contend that the D&E law, which they allege bans the D&E abortion procedure, would result in the closure of West Alabama.  Further, West Alabama and Parker have named additional defendants in their challenge to the D&E law.  However, for several reasons--including that the D&E claim is sufficiently related to the claim that has been and one of the two that will be presented in this litigation--the court holds that the D&E claim should be added to this litigation.

First, the same general circumstances that support adding the school-proximity claim to this litigation also support adding the D&E claim. As a predicate for the application of Rule 15(d), the D&E claim arose after the original complaint was filed. The parties' stay stipulation reflects that they understood that new claims could be added to this litigation. And the D&E claim is in the same posture in this litigation as are the challenges to the new regulation and the school-proximity law.

Second, the analysis of and evidence relevant to the D&E claim will likely significantly overlap not only with that previously presented with regard to the challenge to the original regulation but also with that likely to be presented with regard to the school-proximity challenge. Although the D&E law applies statewide, its primary impact is alleged to be on West Alabama. Because West Alabama is one of only two clinics in the State that provide abortions after 15 weeks and because all such procedures these clinics provide (and are able to

provide) are performed using the D&E method that they contend the law bans, the D&E law will effectively eliminate access to abortions after 15 weeks even though the State allows abortion up to 20 weeks.[5]  Tr. of June 17, 2016, Telephone Conference at 16.  In short, for the relevant group of women (those seeking D&E abortions), the impact of the D&E law will, in a sense, be quite similar to that of the original regulation and the school-proximity law: West Alabama and the other clinic's doors will be shut to women in Alabama seeking abortions after 15 weeks.

As a result, the undue-burden analysis discussed above will in some measure also apply to West Alabama and Parker's challenge to the D&E law, and the evidence already received with regard to the original-regulation

---

5. West Alabama and Parker admit that abortions after 15 weeks may also be performed using an induction procedure.  However, they contend that neither West Alabama nor the other clinic that provides abortions after 15 weeks is equipped to perform this procedure; it involves the induction of labor and, accordingly, can be a multi-day procedure.  Induction must be performed in a hospital, so neither clinic would be an adequate setting.

challenge and to be received with regard to the school-proximity claim will be relevant. Admittedly, in applying the undue-burden standard, the court must analyze the obstacles to abortion access for the "group for whom the law is a restriction." Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 894 (1992) (plurality opinion). While that group presumably would be smaller in regards to the challenge to the D&E law, the evidence and analysis of the impact and obstacles would nonetheless still overlap significantly.

Third, there is an important practical link between the D&E law and the school-proximity law that supports adding the D&E law claim to this litigation. Were the court to conclude that enforcement of the school-proximity law should not be enjoined, this decision would allegedly result in the closure of West Alabama by the end of 2016, a result that would arguably render the D&E challenge moot. Permitting these claims to be litigated together will avoid the possibility of unnecessary adjudication of a claim and will eliminate

the possible need for coordination between different
courts.

Finally, the addition of the following different
defendants does not warrant denial of leave to supplement
this litigation with the challenge to the D&E law: Luther
Strange, in his official capacity as Alabama Attorney
General; Lyn Head, in her official capacity as District
Attorney for Tuscaloosa County; Robert L. Broussard, in
his official capacity as District Attorney for Madison
County; Dr. H. Joseph Falgout, in his official capacity
as Chairman of the Alabama Board of Medical Examiners;
and Dr. James E. West, in his official capacity as
Chairman of the Medical Licensure Commission of Alabama.

As already noted, it is well-established that
supplemental pleadings under Rule 15(d) are appropriate
vehicles for the addition of new parties--including new
defendants--involved in events that arose after the
filing of the original complaint. See Griffin, 377 U.S.
at 227.   The inclusion of more defendants through
supplementation is nothing unusual.

Moreover, as a practical matter, there is nothing to indicate that the addition of these defendants would make the resolution of any claim in these proceedings less efficient.  Nor would these defendants' presence prejudice the State Health Officer.  The State Health Officer already has to defend two of the three claims in this case.  Moreover, because there is an evidentiary overlap between the school-proximity and D&E claims, the State Health Officer, though not a party to the D&E claim, will have the advantage, if he wants, of monitoring the evidence that is developed with regard to that claim.

In any event, that a defendant defends fewer than all the claims in a case is common, and nothing special in this litigation makes it otherwise unusual.  To the extent that the State Health Officer is uninvolved in the enforcement of the D&E law, he need not actively participate in defending against this claim.

*** 

In conclusion, because of the relationship, both as to law and evidence, the D&E claim, the school-proximity

claim, and the amended-regulation challenge bear to the claim this court has already addressed; because of the relationship the three claims have among themselves; because supplementation will not unfairly prejudice the State Health Officer; and because of the current posture of this litigation, the court concludes that it would be more efficient and just to try the three claims together in this lawsuit. Or, to put it another way, the benefit of trying these three claims together strongly outweighs any disadvantage that might arise.

Moreover, it is worth noting that, because the amended regulation, the school-proximity law, and the D&E law determine how, to what extent, and even whether, at all, West Alabama can provide abortions, West Alabama and Parker could certainly have brought a single lawsuit challenging all three. For the same reason, West Alabama and Parker should now be able to add and challenge at one time all three in this litigation.

   C. Alabama Women's Center and Robinson-White's
   Challenges to the School-Proximity and D&E Laws

The court has already concluded that West Alabama and Parker should be allowed to supplement their complaint with their challenges to the school-proximity and the D&E laws.  The additional question now before the court is whether, with the proposed supplemental complaint, Alabama Women's Center, located in Huntsville, and its medical director, Yashica Robinson-White, M.D., should be allowed to join in these challenges.  The answer is yes.

First, West Alabama and Parker's claims and Alabama Women's Center and Robinson-White's claims are virtually identical.  Indeed, it appears at this time that the law and the evidence will be essentially the same.

In considering West Alabama's claims, the court will need to hear extensive evidence regarding the availability of abortions--and, with respect to the challenge to the alleged ban on D&E, mid-second-trimester abortions--elsewhere in the State, in order to determine how severely women's rights would be burdened by the

inability to obtain an abortion (or a mid-second-trimester abortion) at West Alabama. See Planned Parenthood Se., Inc. v. Strange (Strange III), 33 F. Supp. 3d 1330, 1342 (M.D. Ala. 2014) (Thompson, J.) (assessing whether an abortion restriction imposed an undue burden by "first, determining the effect of the requirement on current and potential abortion providers"); see also West Ala. Women's Ctr., 120 F. Supp. 3d at 1309-12 (assessing the effect of the closure of one clinic on women by considering evidence regarding the capacity and accessibility of the other remaining abortion providers in the State). Whether the challenged laws will force other clinics, such as Alabama Women's Center, to close or to stop providing certain procedures is directly relevant--indeed, central--to the adjudication of West Alabama's claims. Thus, the court will need to hear evidence and determine the impact of the challenged laws on Alabama Women's Center and Robinson-White regardless of whether they are plaintiffs in this case. It would be a total waste for resources

34

and time to force Women's Center and Robinson-White to file a separate lawsuit and present this evidence again.

Second, had West Alabama and Parker not sought to include the Alabama Women's Center and Robinson-White as plaintiffs, these new plaintiffs certainly could have moved to intervene, and this court would have granted them permission to do so, in light of the largely overlapping evidence and because the new plaintiffs' "claim[s] ... share[] with the main action [] common question[s] of law or fact." Fed. R. Civ. P. 24(b) (stating circumstances under which permissive intervention is appropriate).

                              * * *


     Accordingly, for the reasons stated above, it is ORDERED as follows:

     (1) Plaintiffs West Alabama Women's Center and William J. Parker's motion to lift the stay and file a supplemental complaint (doc. no. 32) is granted.

     (2) This case is reopened.

(3) The stay previously entered (doc. no. 31) is dissolved.

(4) The proposed first supplemental complaint (doc. no. 32-1) may be filed.

DONE, this the 5th day of July, 2016.

　　　　　　　　　　　　___/s/ Myron H. Thompson_____
　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE